UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHANE BUCHERL, ) | CASE NO. 1:04CV7353 |
| ) | |
| Plaintiff, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| -vs- ) | |
| ) | OPINION AND ORDER |
| DEPUTY MILLER, et al., ) | |
| ) | |
| Defendants. ) | |

## CHRISTOPHER A. BOYKO, J.:

This matter comes before the Court upon the Motion (ECF DKT #53) of Defendants, Deputy Miller, et al., for Summary Judgment and the Motion (ECF DKT #64) of Plaintiff, Shane Bucherl, to Strike Portions of Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion for Summary Judgment is granted and the Motion to Strike is denied.

### I. FACTUAL BACKGROUND

Plaintiff Shane Bucherl and his friend, Mark Pryor, arrived in Allen County, Ohio on May 14, 2004. Plaintiff and Pryor went to the Allen County Fairgrounds, set up camp and sold goods Pryor sells at a monster truck show. Plaintiff and Pryor went to a bar around midnight and Plaintiff drank one beer, four or five margaritas and a shot of "liquid cocaine." Around closing time, Plaintiff and Pryor went outside to Pryor's truck and Plaintiff began to drive back to where they had set up camp earlier.

Plaintiff has very little memory of the events that followed. Plaintiff remembers seeing the lights of a law enforcement vehicle before he was pulled over near his campsite. Deputy

Miller approached the vehicle Plaintiff was driving and asked Plaintiff to submit to field sobriety tests and a breathalyzer but Plaintiff refused. Next, Plaintiff was handcuffed and concedes he may have been uncooperative when getting into the police cruiser. Although Plaintiff remembers being taken directly to jail, Deputy Miller asserts he was actually first transported to the Ohio Highway Patrol Post in Lima, Ohio where he again refused to take a breathalyzer.

Upon arrival at the jail, Deputy Miller escorted Plaintiff to the sally port and turned him over to Corrections Officer ("CO") Chiles. CO Chiles told Plaintiff to face the window so he could be searched. Next, CO Chiles escorted Plaintiff to a cell where he told Plaintiff to kneel on a cement bench so he could remove Plaintiff's handcuffs. After being instructed to kneel on the bench several times, Plaintiff placed one knee on the bench and used his head and knee to push off away from the wall. CO Chiles had intended to take Plaintiff to the ground to gain control, however, before he could, Plaintiff again pushed back and CO Chiles ended up on the ground side-by-side with Plaintiff. Plaintiff was helped back up and the handcuffs were then removed. At that point in time, CO Chiles did not observe any swelling, blood or black and blue marks on Plaintiff's face.

As CO Chiles left Plaintiff's cell, Plaintiff began yelling and kicking the cell door. CO Chiles, CO Lee and Corporal Wireman told Plaintiff if he did not stop yelling and kicking, he would be sprayed. Plaintiff concedes he was told not to be so loud. However, Defendants assert Plaintiff continued for two to five more minutes — at which time, Corporal Wireman opened the cell door and CO Chiles ordered Plaintiff to sit down. When Plaintiff refused to back off and sit down, CO Chiles administered a one-half second spray of pepper spray or OC gas to Plaintiff's face to stop Plaintiff's disruptive noisemaking and to keep him from injuring himself.

2

However, Plaintiff alleges, to the contrary, when his cell door was opened, he stood still but was sprayed nonetheless. CO Chiles directed Plaintiff to the sink and told him to splash water on his face immediately after administering the OC spray. Approximately fifteen minutes later, Corporal Wireman provided Plaintiff with Bio-Shield decontaminant to counteract the spray's effects.

According to CO Chiles, when his shift ended at 7:00 a.m. the next morning, he observed Plaintiff's face and saw some swelling due to the pepper spray; but "no marks, blackness around his eyes, bruising on his face or swelling or bleeding of his nose." CO Chiles further claims Plaintiff never asked him for medical attention. Nurse Glenna Upshaw saw Plaintiff at 9:30 a.m. to conduct a routine TB test pursuant to state law. According to Nurse Upshaw, she had to call Plaintiff's name several times to have him come out of the cell to the medication cart. Nurse Upshaw observed a strong odor of alcohol, but stated Plaintiff appeared able to understand her and respond to her questions. Nurse Upshaw asked Plaintiff about his black eye which she categorized as mild — on a scale ranging from mild to severe. Nurse Upshaw examined Plaintiff and found no open areas, cuts, swelling, bruising or markings. Plaintiff refused Nurse Upshaw's offer of Tylenol and did not ask for additional medical attention.

Following his arrest, Plaintiff pled guilty both to operating a vehicle under the influence of alcohol or drugs and driving in violation of the law by failing to maintain the proper lane. After serving his three-day mandatory jail sentence, Plaintiff was released. Plaintiff filed a Complaint in this Court against numerous individual Defendants, alleging excessive force and failure to provide medical attention under 42 U.S.C. § 1983, and lodging *Monell* claims regarding excessive force and inadequate training against Allen County. Now before this Court

3

is Defendants' Motion for Summary Judgment.

## II. LAW AND ANALYSIS

### Standard of Review

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is not material unless it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986). An opponent of a motion for summary judgment may not rely on the mere allegations of the complaint, but must set forth specific facts showing a genuine issue for trial. *Id.* When no reasonable jury could return a verdict for the non-moving party, no genuine issue exists for trial. *Id.* However, in evaluating a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the non-moving party. *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097-98 (6th Cir. 1994).

### § 1983 Claims Against Individually-Named Defendants

To state a viable claim under 42 U.S.C. § 1983, "plaintiffs must produce evidence that: (1) they were deprived of a right, privilege, or immunity secured by the federal Constitution or law of the United States, and (2) the deprivation was caused by a person while acting under the color of state law." *Upsher v. Grosse Pointe Public School Sys.*, 285 F.3d 448, 452 (6th Cir. 2002). The parties concede Defendants were acting under the color of state law. However, Defendants argue Plaintiff was not deprived of any right, privilege or immunity secured by the federal Constitution or law of the United States.

4

**Excessive Force Claims**

When addressing an excessive force claim brought under § 1983, the specific constitutional right allegedly infringed must be identified. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Plaintiff asserts his Fourth Amendment right "to be secure in one's person against . . . unreasonable seizures" was violated by CO Chiles' use of alleged excessive force when removing Plaintiff's handcuffs. Under the Fourth Amendment, the Court must analyze the reasonableness of the officer's actions. *Id.* at 396-97. "The reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Plaintiff alleges the use of excessive force by CO Chiles, Deputy Miller and CO Lee; however, Plaintiff has produced no evidence of any force used by anyone other than CO Chiles. Therefore, summary judgment is granted in favor of Deputy Miller and CO Lee on the excessive force claim.

**Takedown Maneuver**

Plaintiff contends CO Chiles' intentional takedown of an intoxicated, restrained prisoner for the purpose of removing handcuffs was not objectively reasonable. Plaintiff claims he posed no substantial risk to the officer and there was no reason to take him down face-first onto a concrete floor. However, Plaintiff puts forth no evidence to support his assertions that it was unreasonable for CO Chiles to attempt to take down Plaintiff. In fact, Plaintiff answered "No" when asked if he had any memory of the events relating to the removal of the handcuffs.

Accordingly, because Plaintiff has presented no evidence to demonstrate CO Chiles'

actions were objectively unreasonable, this Court finds CO Chiles did not use excessive force when removing Plaintiff's handcuffs, and therefore, did not violate Plaintiff's Fourth Amendment right to be secure in one's person from unreasonable seizures.

**Pepper Spray**

Plaintiff further contends CO Chiles utilized excessive force when he administered a short burst of pepper spray or OC spray to Plaintiff. According to Plaintiff, he was sprayed while standing quietly in his cell. However, Plaintiff's recollection of the events leading up to the OC spray being administered is foggy. Plaintiff remembers pounding on the cell, kicking the cell and yelling for the officers in an attempt to obtain permission to use the telephone. Moreover, Plaintiff remembers the officers warning him to be quiet, but he does not remember how many times he received this warning. Lastly, Plaintiff asserts Corporal Wireman's conduct was unreasonable because he waited ten to fifteen minute before offering him decontaminant. In support of his allegations, Plaintiff produced expert testimony regarding the use of OC spray. Plaintiff's expert, Joseph Stine, opines the use of the OC spray on Plaintiff was tantamount to torture because Plaintiff was standing quiet and still in his cell when CO Chiles administered the spray.

On the other hand, Defendants testify Plaintiff was uncooperative and disruptive. As a result, Corporal Wireman made the decision to spray Plaintiff. According to Allen County policy, once the decision is made to spray an inmate, the acting officer, CO Chiles in this case, must follow through with the order. CO Chiles testified he was not aware Corporal Wireman waited fifteen minutes before administering the Bio-Shield decontaminant to Plaintiff; although he testified it is standard to wait a little bit after spraying an inmate in order to let the spray take

effect before re-entering the cell. Ultimately, Defendants maintain CO Chiles used the minimum amount of force necessary to deal with Plaintiff. Specifically, according to Sheriff Beck, the use of OC spray on an inmate who is yelling, kicking the cell door and disrupting jail procedures is appropriate under the use of force continuum utilized by Allen County. Critically, the testimony of Plaintiff's expert, Joseph Stine, relies upon Plaintiff's shaky recollections, and is countered by Plaintiff's own admissions to pounding on the cell, kicking the cell and yelling for the officers on the night in question. Even if Plaintiff may have stopped such behavior upon the opening of his cell door by Corporal Wireman and CO Chiles, the order to spray him had already been issued and therefore, according to Allen County's policy, CO Chiles was to follow through and spray the inmate.

Accordingly, because CO Chiles and Corporal Wireman followed Allen County policy regarding the administration of OC spray to an inmate; because the officers' conduct was at the minimum end of the use of force continuum; and because Plaintiff cannot provide evidence to show CO Chiles acted unreasonably, this Court finds CO Chiles did not violate Plaintiff's Fourth Amendment rights by using excessive force in the administration of the OC spray.

**Claim of Failure to Provide Medical Attention**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" caused by a "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 105. A constitutional claim under § 1983 based on the denial of medical treatment has an objective and a subjective component. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).

7

The objective component requires the existence of a "sufficiently serious" medical need. *Id.* at 896. "A medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 897. Further, the subjective component "requires an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Id.* at 896. Furthermore, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Id.* (citing *Horn v. Madison County Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

Plaintiff alleges his Eighth Amendment constitutional rights were violated when he was injured in the Allen County Jail and subsequently denied medical treatment. Specifically, Plaintiff alleges Deputy Sheriff Miller, Deputy Sheriff Joseph, CO Chiles, CO Lee and Corporal Wireman all acted with deliberate indifference towards his "obvious medical needs." However, Defendants assert Plaintiff made no requests for medical attention and none of the Defendants noticed anything other than the fact that Plaintiff appeared to have a black eye. Moreover, an Allen County Nurse, Nurse Glenna Upshaw, examined Plaintiff, and she recorded he had a "mild" black eye and refused her offer of Tylenol.

Parenthetically, the Court notes that Plaintiff has moved to strike parts of Defendants' brief supported by the "expert" testimony of Nurse Upshaw because her "expert" report was not provided. Defendants maintain, and the Court agrees, that Nurse Upshaw is a fact witness. The Court considered only her recitation of events she witnessed, and her interaction with Plaintiff, and based no determination upon any purported medical opinion. Plaintiff's motion to strike is denied.

8

Plaintiff Bucherl can satisfy neither the objective nor the subjective requirements of an Eighth Amendment failure to provide medical attention claim. First, no evidence has been produced to show Plaintiff suffered anything other than a "mild" black eye. Therefore, Defendants did not act unreasonably when they failed to identify a sufficiently serious medical need. Second, Plaintiff has produced no evidence to show that he requested medical attention. In fact, he declined Nurse Upshaw's offer of medical attention beyond the standard evaluation she administered. Therefore, Defendants did not act with deliberate indifference toward Plaintiff in not providing medical care beyond the evaluation done by Nurse Upshaw. Accordingly, this Court grants summary judgment in Defendants' favor on Plaintiff's Eighth Amendment failure to provide medical attention claim.

### *Monell* Claims Against County

Under 42 U.S.C. § 1983, "[l]ocal governing bodies . . . can be sued directly . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't Of Social Servs.*, 436 U.S. 658, 690 (1978). Moreover, "local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom.'" *Id.* at 691. While a city can be liable under § 1983 for inadequate training of its employees, "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

Plaintiff alleges his injuries were the result of Allen County's improper policies, practices

9

and procedures regarding the use of excessive force. First, Plaintiff alleges the execution of a face-first takedown procedure performed on a handcuffed inmate in a jail cell is not reasonable. However, because Plaintiff testified at his deposition he does not remember the alleged takedown, the removal of handcuffs, nor the surrounding circumstances, this argument lacks merit.

Second, Plaintiff contends Allen County's policy, practice and procedure allegedly encouraging the use of pepper or OC spray on prisoners confined in cells for the purpose of forcing their silence is unreasonable. However, Sheriff Daniel Beck and CO Chiles' acting supervisor on the night in question, Corporal Wireman, both stated in their depositions that CO Chiles used the appropriate level of force when dealing with Plaintiff's behavior — yelling and kicking at the cell door. Allen County Sheriff Department employees receive yearly training on the use of OC spray and are instructed to follow a standard use of force continuum when dealing with uncooperative and/or dangerous inmates. According to Sheriff Beck, the use of OC spray on an inmate who is yelling, kicking the cell door and disrupting jail procedures is appropriate under the use of force continuum in place in Allen County. Although Plaintiff's expert, Joseph Stine, asserts the use of OC spray is two levels above the force necessary in this situation according to Allen County's force continuum, Sheriff Beck testified the use of force continuum is in place merely to guide the officers and it is up to the particular officer to decide what is necessary in particular circumstances.

Despite Plaintiff's numerous claims, Defendants argue that without proof of a constitutional violation by any individual Defendant, there can be no liability by the County. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Plaintiff has offered no evidence to

show either Defendants' actions or the County's practices, policies, procedures or customs are unconstitutional. Plaintiff has produced no evidence to show Allen County's policy of administering OC spray to confined inmates is deliberately indifferent to an inmate's rights. Instead, Defendants, for their part, have produced evidence to show Allen County's policy regarding the use of OC spray is strictly followed, and that officers receive yearly training regarding such policy. Accordingly, Plaintiff has failed to demonstrate Allen County is liable to Plaintiff under *Monell* for any claims asserted against it.

### III. CONCLUSION

Plaintiff, Shane Bucherl, having little or no recollection of the occurrences at the Allen County Jail in May of 2004, has not met his burden under Fed. R. Civ. P. 56 of providing specific facts and competent evidence showing a genuine issue for trial. Even drawing all possible inferences from the facts in the light most favorable to Plaintiff, he has not demonstrated the elements necessary to sustain his claims under 42 U.S.C. § 1983 of constitutional and federal law violations. Therefore, summary judgment is granted in favor of all Defendants.

**IT IS SO ORDERED.**

DATE: 10/2/06

*Christopher A. Boyko*
**CHRISTOPHER A. BOYKO**
**United States District Judge**